**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC. and | ) | |
| LG ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 08-234 (GMS) |
| | ) | |
| WHIRLPOOL CORPORATION and | ) | |
| MAYTAG CORPORATION, | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs LG Electronics U.S.A., Inc. and LG Electronics, Inc. (collectively "LG"), through counsel, allege as follows:

## NATURE OF THE ACTION

1.      This is an action seeking redress for patent infringement under the patent laws of the United States, Title 35, United States Code, declaratory judgments of non-infringement, invalidity, and unenforceability under the patent laws of the United States, Title 35, United States Code, unfair competition under the Lanham Act of the United States, Title 15, United States Code, and deceptive trade practices under the Delaware Deceptive Trade Practices Act and comparable unfair competition and/or deceptive trade practices acts of other states.

## THE PARTIES

2.      Plaintiff LG Electronics U.S.A., Inc. ("LG USA"), is a Delaware corporation having a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

3.      Plaintiff LG Electronics, Inc. ("LG Electronics"), is a Korean corporation having a principal place of business at LG Twin Towers, 20 Yoido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.

4.      LG U.S.A. is a wholly owned subsidiary of LG Electronics.

5.      On information and belief, Defendant Whirlpool Corporation ("Whirlpool Corp."), is a Delaware corporation having a principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022.

6.      On information and belief, Defendant Maytag Corporation ("Maytag Corp.") is a Delaware corporation having a principal place of business at 2000 North M-63, Benton Harbor, Michigan 49022.  Maytag is a wholly-owned subsidiary of Whirlpool.  Whirlpool Corp. and Maytag Corp. are referred to collectively herein as "Whirlpool."

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1338(a) and (b), as well as 28 U.S.C. § 2201 and 2202, and subject matter jurisdiction over the Delaware Deceptive Trade Practices and other comparable, applicable state deceptive and unfair trade practices acts claims, as pendent state claims.

8.      This Court has personal jurisdiction over Whirlpool, as Whirlpool Corp. and Maytag Corp., are both incorporated in the State of Delaware.

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## FACTUAL BACKGROUND

10.      LG is a manufacturer and retailer of consumer appliances throughout the world.

11.      Whirlpool is also a manufacturer and retailer of consumer appliances, primarily in the United States.

12.     The relevant product market in this case is the market for refrigerators in the United States and, in particular, premium, high-end refrigerators having advanced-features that are attractive to consumers.

13.     During the past several years, Whirlpool has faced increasing competition in the refrigerator market, as well as other appliance markets.  This competition has placed increasing pressure on Whirlpool and induced Whirlpool to take additional actions to protect and preserve its position in the market.  These actions have affected interstate commerce in the United States as well as commerce between the United States and other nations.

14.     On information and belief, rather than increase its own internal research and development efforts in order to compete more effectively on the basis of quality, features, and/or cost, Whirlpool has purchased competitors and engaged in other acts, including misusing its intellectual property rights and engaging in a systematic attempt to damage LG's integrity.

15.     Whirlpool has acquired the assets of several of its former competitors, including patent assets, and elected to attack remaining competitors through the use, among other things, of assets acquired in these transactions.

16.     Specifically, Whirlpool has attacked LG in a number of ways, including attacking LG's integrity, misusing its intellectual property rights by initiating and prosecuting sham petitioning activity targeting LG, assertion of intellectual property assets that were acquired fraudulently and/or inequitably, and engaging in a series of infringement claims against LG including claims that are objectively baseless and are pursued primarily for the purpose of attacking LG's integrity.  To date, each of these litigations has been unsuccessful.

17.     Whirlpool has purchased competitors, such as Maytag.  Among other assets, Whirlpool acquired Maytag's patent portfolio, including the '526 patent, which Whirlpool is asserting against LG in the instant case.

18.     Among the claims that Whirlpool has asserted against LG with respect to its refrigerator products are claims that are objectively baseless and were made without due investigation and diligence by Whirlpool, as well as patent claims that were acquired through

3

fraud or inequitable conduct by Whirlpool and/or Whirlpool's predecessor in interest. LG believes that Whirlpool's litigation tactics are part of a larger plan to attack LG's credibility and are pursued for the purpose of harming LG through the litigation process.

19.     In 2004, Whirlpool filed a complaint in the U.S. District Court for the Western District of Michigan, asserting two of its patents relating to washing machine technology against LG. *Whirlpool Corp. v. LG Electronics, Inc.*, Civil Action No. 04-cv-00100 (W.D. Mich.) Judgment was entered against Whirlpool on both patents, invalidating one and finding no infringement by LG of the other. The Federal Circuit affirmed. *Whirlpool Corp. v. LG Electronics, Inc.*, 296 Fed. Appx. 70 (Fed. Cir. 2008).

20.     On January 23, 2008, Whirlpool filed a complaint in the International Trade Commission alleging that LG Electronics infringed five Whirlpool patents relating to refrigerators. *In the Matter of Certain Refrigerators and Components Thereof*, 337-TA-632 (US ITC). Whirlpool either knew or should have known that the subject matter of two of the patents had been sold and/or offered for sale by Whirlpool and/or its predecessor(s) in interest more than a year before the applications were filed that matured into the patents. After LG Electronics identified to Whirlpool invalidating prior art sales of Whirlpool's own products relative to two of the patents, Whirlpool moved to terminate the ITC Investigation as to these two patents. The Administrative Law Judge accepted Whirlpool's request and terminated the Investigation as to these two patents.

21.     The Investigation was terminated as to two more of Whirlpool's patents by mutual agreement, after LG presented Whirlpool with evidence of invalidating prior art with respect to these two additional patents.

22.     These infringement claims are objectively baseless and LG believes that Whirlpool failed to exercise due diligence and ordinary care in bringing these claims, without first conducting a reasonable investigation which would have revealed the defects in Whirlpool's claims.

23.     Following the ITC hearing on the remaining single patent, the Administrative Law Judge issued an Initial Determination on February 26, 2009, in which he found that LG does not infringe.

24.     Following this pattern of asserting objectively baseless infringement claims, without adequate investigation and, LG believes, for the ulterior purpose of attacking LG's credibility, Whirlpool initially asserted in this case claims for infringement of seven patents in its First Answer and Affirmative Defenses, filed May 1, 2008.  Based on some of the same evidence identified above with respect to the ITC Investigation, Whirlpool has dismissed three of its original seven patents from this case as well.

25.     Whirlpool has also continued to disparage LG, its products, and its integrity through these attacks and other statements that are likely to cause confusion, mistake, and/or deception.

26.     As a result of these activities, Whirlpool has damaged LG, and will likely continue these improper and unlawful activities unless and until enjoined by this Court.


**COUNT ONE:**
**INFRINGEMENT OF U.S. PATENT NO. 7,316,121**
**("FAST FILL" TECHNOLOGY)**

27.     LG realleges and incorporates by reference each of paragraphs 1-26 above, as if fully set forth herein.

28.     On January 8, 2008, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 7,316,121 ("the '121 patent"), entitled "Dispenser of Icemaker in Refrigerator."  A true and correct copy of the '121 patent is attached hereto as Exhibit A.

29.     LG Electronics is the owner by assignment of the '121 patent and LG USA has the exclusive right to make, use, import, offer for sale, and sell in the United States products covered by the '121 patent.

30.     On information and belief, Whirlpool has been making, using, selling, and/or offering for sale refrigerators that practice the invention of the '121 patent and thus infringe one or more claims of the '121 patent.  Said refrigerators include, but are not limited to, Whirlpool model nos. GC5NHAXS, GF6NFEXT, GD5VVAXT, GS6NBEXR, GS6NVEXS, and GD5NVAXS.

31.     On information and belief, Whirlpool has induced infringement of and contributorily infringed the '121 patent, causing third parties to use certain refrigerators in a manner that infringes the '121 patent, including, but not limited to, Whirlpool model nos. GC5NHAXS, GF6NFEXT, GD5VVAXT, GS6NBEXR, GS6NVEXS, and GD5NVAXS.

32.     On information and belief, Whirlpool has been infringing the '121 patent and will continue to do so unless and until enjoined by this Court.

33.     Whirlpool's acts of infringement of the '121 patent have caused LG irreparable injury and damages, in an as-yet-undetermined amount and, unless and until enjoined by this Court, will continue to do so.

34.     On information and belief, Whirlpool's acts of infringement of the '121 patent have been and continue to be willful and deliberate, rendering this case eligible for enhanced damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT TWO:
## INFRINGEMENT OF U.S. PATENT NO. 6,834,922
## (VEGETABLE DRAWER)

35.     LG realleges and incorporates by reference each of paragraphs 1-34 above, as if fully set forth herein.

36.     On December 28, 2004, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 6,834,922 ("the '922 patent"), entitled "Vegetable Compartment in Refrigerator."  A true and correct copy of the '922 patent is attached hereto as Exhibit B.

37.     LG Electronics is the owner by assignment of the '922 patent and LG USA has the right to make, use, import, offer for sale, and sell in the United States products covered by the '922 patent.

38.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale Maytag brand refrigerators, including, but not limited to, Maytag model no. MFI2568AE.

39.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale Amana brand refrigerators, including, but not limited to, Amana model no. AFI2538AE.

40.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale KitchenAid brand refrigerators, including, but not limited to, KitchenAid model no. KBFS20ETSS.

41.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale Jenn-Air brand refrigerators, including, but not limited to, Jenn-Air model no. JFI2089AEP.

42.     On information and belief, Whirlpool has been making, using, selling, and/or offering for sale refrigerators that practice the invention of the '922 patent and thus infringe one or more claims of the '922 patent.  Said refrigerators include, but are not limited to, Whirlpool model nos. GX5FHDXT and GC5NHAXS, Maytag model no. MFI2568AE, Amana model no. AFI2538AE, KitchenAid model no. KBFS20ETSS, and Jenn-Air model no. JFI2089AEP.

43.     On information and belief, Whirlpool has induced infringement of and contributorily infringed the '922 patent.

44.     On information and belief, Whirlpool has been infringing the '922 patent and will continue to do so unless and until enjoined by this Court.

45.     Whirlpool's acts of infringement of the '922 patent have caused LG irreparable injury and damages in an as-yet-undetermined amount and, unless and until enjoined by this Court, will continue to do so.

46.     On information and belief, Whirlpool's acts of infringement of the '922 patent have been and continue to be willful and deliberate, rendering this case eligible for enhanced damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

**COUNT THREE:**
**INFRINGEMENT OF U.S. PATENT NO. 7,147,292**
**(GASKET)**

47.     LG realleges and incorporates by reference each of paragraphs 1-46 above, as if fully set forth herein.

48.     On December 12, 2006, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 7,147,292 ("the '292 patent"), entitled "Obturator for Refrigerator."  A true and correct copy of the '292 patent is attached hereto as Exhibit C.

49.     LG Electronics is the owner by assignment of the '292 patent and LG USA has the right to make, use, import, offer for sale and sell in the United States products covered by the '292 patent.

50.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale Maytag brand refrigerators, including, but not limited to, Maytag model no. MFI2568AE.

51.     On information and belief, Whirlpool has been making, using, selling, and/or offering for sale refrigerators that practice the invention of the '292 patent and thus infringe one or more claims of the '292 patent.  Said refrigerators include, but are not limited to, Maytag model no. MFI2568AE.

52.     On information and belief, Whirlpool has induced infringement of and contributorily infringed the '292 patent.

53.     On information and belief, Whirlpool has been infringing the '292 patent and will continue to do so unless and until enjoined by this Court.

54.     Whirlpool's acts of infringement of the '292 patent have caused LG irreparable injury and damages in an as-yet-undetermined amount and, unless and until enjoined by this Court, will continue to do so.

55.     On information and belief, Whirlpool's acts of infringement of the '292 patent have been and continue to be willful and deliberate, rendering this case eligible for enhanced damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## COUNT FOUR:
## INFRINGEMENT OF U.S. PATENT NO. 7,383,689
## (FAST FILL TECHNOLOGY)

56.     LG realleges and incorporates by reference each of paragraphs 1-55 above, as if fully set forth herein.

57.     On June 10, 2008, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 7,383,689 ("the '689 patent"), entitled "Dispenser of Icemaker in Refrigerator."  A true and correct copy of the '689 patent is attached hereto as Exhibit D.

58.     LG is the owner by assignment of the '689 patent and LG U.S.A. has the right to make, use, import, offer for sale and sell in the United States products covered by the '689 patent.

59.     On information and belief, Whirlpool markets, manufactures, sells, and/or offers for sale refrigerators, including, but not limited to, Whirlpool model nos. GC5NHAXS, GF6NFEXT, GD5VVAXT, GS6NBEXR, GS6NVEXS, and GD5NVAXS.

60.     On information and belief, Whirlpool has been making, using, selling, and/or offering for sale refrigerators that practice the invention of the '689 patent and thus infringe one or more claims of the '689 patent.  Said refrigerators include, but are not limited to, Whirlpool model nos. GC5NHAXS, GF6NFEXT, GD5VVAXT, GS6NBEXR, GS6NVEXS, and GD5NVAXS.

61.     On information and belief, Whirlpool has induced infringement of and contributorily infringed the '689 patent.

62.     On information and belief, Whirlpool has been infringing the '689 patent and will continue to do so unless and until enjoined by this Court.

63.     Whirlpool's acts of infringement of the '689 patent have caused LG irreparable injury and damages in an as-yet-undetermined amount and, unless and until enjoined by this Court, will continue to do so.

64.     On information and belief, Whirlpool's acts of infringement of the '689 patent have been and continue to be willful and deliberate, rendering the case eligible for enhanced damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

### COUNT FIVE:
### DECLARATORY JUDGMENT OF
### INVALIDITY AND NON-INFRINGEMENT
### OF U.S. PATENT NO. 6,082,130
### (IN-FREEZER ICE MAKER WITH IN-DOOR ICE DISPENSER)

65.     LG realleges and incorporates by reference each of paragraphs 1-64 above, as if fully set forth herein.

66.     LG does not infringe, has not infringed, has not and does not induce or contribute to the infringement of any valid and enforceable claim of U.S. Patent No. 6,082,130 ("the '130 patent"), either literally or under the doctrine of equivalents.  A true and correct copy of the '130 patent is attached hereto as Exhibit E.

67.     The '130 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT SIX:
## DECLARATORY JUDGMENT OF INVALIDITY,
## NON-INFRINGEMENT, AND UNENFORCEABILITY
## OF U.S. PATENT NO. 5,269,601
## (PLAQUED LINER)

68.     LG realleges and incorporates by reference each of paragraphs 1-67 above, as if fully set forth herein.

69.     LG does not infringe, has not infringed, has not and does not induce or contribute to the infringement of any valid and enforceable claim of U.S. Patent No. 5,269,601 ("the '601 patent"), either literally or under the doctrine of equivalents.  A true and correct copy of the '601 patent is attached hereto as Exhibit F.

70.     The '601 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

71.     The '601 patent is unenforceable.  On information and belief, the plaqued liners were well-known in the relevant art and widely recognized prior to the application that led to the '601 patent, and the benefits of such features are inherent.

72.     On May 18, 1992, Whirlpool filed Application Serial No. 07/880,859 (the '859 application") which matured into the '601 patent.

73.     On November 10, 1992, The U.S. Patent and Trademark Office issued an Office Action, in which the Examiner concluded that all of the then-pending claims of the '859 application are invalid as obvious over Tillman, U.S. Patent No. 3,940,195, entitled "Refrigeration Cabinet," issued on February 24, 1976 ("Tillman").  Tillman discloses indentations or plaques, like those of the '601 patent, that absorbs stress to prevent thermal deformation.

74.     In response to the Examiner's rejection of all claims, Whirlpool argued to the Examiner that its indentations are different than Tillman's.  Among the representations that Whirlpool made is that:

> an offset between 0.0625 and 0.25 inch provides substantial
> improvements in preventing wall deformation and that offsets

> greater than this range only offer incremental improvements.  In contrast to this, Tillman appears to show projecting portions having a depth greater than 0.25 inch.  Furthermore, the Applicants believe that one skilled in the art and understanding the principles of expansion joints and beam strength would be led to an offset greater than 0.25 inch without the teachings of the present invention.

Thus, Whirlpool acknowledged by these statements that plaques of the depth disclosed by Tillman (allegedly greater than 0.25 inches deep), nonetheless, form expansion joints and beam elements that absorb thermal stress and prevent wall deformation.  Understandably, on April 5, 1993, the Examiner issued a Final Office Action, again rejecting all of the claims over Tillman. (Exhibit G.)

75.    In response to the Final Office Action, Whirlpool amended its claims and presented additional arguments.  As a representative example, Whirlpool amended claim 1 to further recite "edge portions," "expansion joints" and "beam elements."  (Exhibit G.)

76.    In apparent contradiction to its statements in response to the First Office Action, Whirlpool argued in response to the Final Office Action that it was:  "well understood by those of skill in the art, in order for edge portions to provide an expansion joint function and a beam element function for an interior plastic layer of a refrigerator insulating wall, the edge portions must be of a substantial size relative to the plastic layer size."  (Exhibit G.)  In contrast, in the prior First Office Action Response, Whirlpool distinguished Tillman on the basis that Whirlpool's plaques were smaller than Tillman's.

77.    More striking, Whirlpool represented that "[t]he projecting portions 18 of Tillman are clearly of a size which would not provide expansion joints or beam elements for the plastic layer of the refrigerator wall."  (Exhibit G.)  In contrast, Whirlpool had argued in response to the First Office Action that "one skilled in the art and understanding the principles of expansion joints and beam strength would be led to an offset greater than 0.25 inch" namely, Tillman's alleged offsets.

78.     Thus, Whirlpool argued, first, that one of ordinary skill would know that Tillman provides the claimed expansion joints and beam elements and, when that argument failed, contradicted itself, and argued that Tillman would not provide the claimed expansion joints and beam elements.  Perhaps more important, having distinguished Tillman on the basis of the 0.0625 to 0.25 inch offsets, Whirlpool then failed to add this critical limitation to any of the asserted claims.

79.     On June 18, 1993, following Whirlpool's Response to the Final Office Action, the Examiner allowed the '859 application, providing no comments or reasons for allowance.

80.     On information and belief, Whirlpool misrepresented the prior art to the Patent Office and failed to add critical limitations to the asserted claims during prosecution of the '859 application that matured into the '601 patent with deceptive intent in order to facilitate allowance of the '601 patent.

**COUNT SEVEN:**
**DECLARATORY JUDGMENT OF INVALIDITY,**
**NON-INFRINGEMENT, AND UNENFORCEABILITY**
**OF U.S. PATENT NO. 5,269,154**
**(HEATED CLOSURE DOOR)**

81.     LG realleges and incorporates by reference each of paragraphs 1-80 above, as if fully set forth herein.

82.     LG does not infringe, has not infringed, has not and does not induce or contribute to the infringement of any valid and enforceable claim of U.S. Patent No. 5,269,154 ("the '154 patent"), either literally or under the doctrine of equivalents.  A true and correct copy of the '154 patent is attached hereto as Exhibit H.

83.     The '154 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

84.     The '154 patent is unenforceable.  On information and belief, during prosecution of the '154 patent, with deceptive intent, the Assignee of the application that matured into the '154 patent failed to cite material prior art references of which it was aware and made certain

representations to the U.S. Patent and Trademark Office that it knew or should have known were false and/or misleading.

85.    On July 17, 1992, Whirlpool filed application Serial No. 07/914,400 for "Heated Ice Door for Dispenser" ("the '400 application"), which matured into the '154 patent.

86.    At that time, Whirlpool also had pending, Application Serial No. 07/522,901 ("the '901 application"), which later issued as U.S. Patent No. 5,139,183 for "Ice Crusher Ice Door Chute" (May 14, 1990) ("the '183 patent"), also assigned to Whirlpool.  A true and copy of the '183 patent is attached hereto as Exhibit I.

87.    The '901 and '400 applications disclose substantially the same subject matter. For example, Figure 1 of each patent is identical, and Figure 2 in each patent is nearly identical, as shown below.





'154 patent                 '183 patent

88.     Figure 4 of the '154 patent is also similar to Figure 3 of the '183 patent, as shown below:



'154 patent Fig. 4                    '183 patent Fig. 3

89.     The "Field of Invention" is identical in both patents, and the "Background of the Invention" is nearly identical in both.

90.     Both patents disclose an "ice dispenser closure."  Although the '154 patent discloses the addition of a heater associated with the ice dispenser closure, the two patents otherwise contain substantially the same disclosure throughout their specifications and claims.

91.     So closely related is the subject matter of the '400 and '901 applications that Whirlpool expressly references the '901 application in the '400 application:  "[a] typical conventional through-the-door ice dispenser includes a front opening in the ice chute through which ice pieces are delivered in a dispensing operation.  The ice pieces may comprise the fully formed ice bodies, or crushed ice.  Such an ice dispensing  apparatus is shown in Buscher et al., U.S. patent application No. 522,901, which is owned by the assignee of the present invention, and which comprises a closure mounted frontwardly of the opening and being biased to a closed position wherein the closure effectively blocks the opening." ('154 patent, col. 1:34-44.)

92.     During prosecution of the '901 application, at least 28 prior art patents were cited by the Examiner or identified by Whirlpool as material references.  On August 14, 1990, Whirlpool filed an Information Disclosure Statement ("IDS") in the '901 application, identifying

15

U.S. Patent Nos. 3,640,088 ("the '088 patent"), as well as a number of additional references, each of which disclose closures for ice dispensing doors:  3,572,053 ("the '053 patent"); 3,942,334 ("the '334 patent"); 4,555,049 ("the '049 patent"); 4,090,641 ("the '641 patent"); 4,069,545 ("the '545 patent"); 3,561,231 ("the '231 patent"); and 3,718,237 ("the '237 patent").

93.    The '088 patent, a true and correct copy of which is attached hereto as Exhibit J, discloses an ice delivery passage with "a closure member and a heater" that "is so constructed and arranged within the door as to maintain the various portions of the passage at temperatures preventing the accumulation of ice slush and water in the passage and the freezing of the closure member."  ('088 patent, Abstract.)

94.    Specifically, the heater in the closure member of the '088 patent is designed to prevent sweating around the door closure.  The '088 patent provides in pertinent part:  "[i]n order to prevent the closure member 31 from freezing in its closed position due to the freezing of moisture which may collect on the surfaces thereof for any of a number of reasons, there is provided an annular heater 37 surrounding and in heating engagement with the outer surface of the lower part of the passage 24 adjacent and immediately below the port part 25." ('088 patent, col. 3:1-7.)

95.    In the IDS that Whirlpool filed in the '901 application on August 14, 1990, Whirlpool describes the '088 patent as disclosing the "use of a heater to prevent freezing of an ice closure member."  ('901 application IDS, attached hereto as excepts of the '901 file history, Exhibit K.)

96.    During prosecution of the '400 application that matured into the '154 patent, Whirlpool filed a single IDS on August 7, 1992.  In spite of the substantial overlap in the subject matter of the '901 and '400 applications, Whirlpool failed to include in the IDS filed in the '400 application several of the references that Whirlpool had previously cited during the prosecution of the '901 application as being relevant to the subject matter of the '901 application.

97.    Among them, Whirlpool did not disclose to the U.S. Patent and Trademark Office the '088 patent, disclosing a heater in a ice closure member, and the Patent Office apparently did not locate it independently.

98.    On December 2, 1992, the PTO issued an Office Action in which it rejected all but one of the pending claims of the '400 application, and objected to the remaining claim.  The Examiner relied on Smith, U.S. Patent No. 3,055,193, as disclosing a heater:  "this feature [is] old in the refrigerator insulating art.  It would have been obvious to one of ordinary skill in the art at the time of applicant's invention from the teaching of Smith to modify the ice dispensing apparatus of [the primary reference relied upon by the Examiner] by adding a resistance heater movable with the closure and sandwiched between plastic sheets to prevent condensation in the surrounding area."  (Exhibit L, excerpts from the '400 application file history.)

99.    On March 2, 1992, Whirlpool responded to the Office Action.  Although the '088 patent expressly discloses that:  "[i]n order to prevent the closure member 31 from freezing in its closed position due to the freezing of moisture which may collect on the surfaces thereof for any of a number of reasons, there is provided an annular heater 37," Whirlpool represented to the PTO that the prior art: "nowhere teaches or suggests the use of heating means to prevent sweating on a closure for a refrigerator door, much less an ice dispensing apparatus.  (Exhibit L, excerpts from the '400 application file history, Response to Office Action, filed March 2, 1993, at 2-3.)  This representation was not true, a fact that was and should have been known to Whirlpool at the time it was made.  In response to this representation, the Examiner allowed the claims.

100.    Thus, Whirlpool distinguished the subject matter of the '154 patent from the prior art by arguing that the prior art did not include a heater, in spite of Whirlpool's prior admission that the '088 patent specifically discloses the "use of a heater."

101.    On information and belief, Whirlpool failed to cite the '088 patent during prosecution of the '400 application that matured into the '154 patent, and misrepresented the teachings of the prior art, with deceptive intent in order to facilitate allowance of the '154 patent.

**COUNT EIGHT:**
**DECLARATORY JUDGMENT OF**
**INVALIDITY AND NON-INFRINGEMENT**
**OF U.S. PATENT NO. 6,997,526**
**(DOOR STORAGE SYSTEM)**

102.    LG realleges and incorporates by reference each of paragraphs 1-101 above, as if

fully set forth herein.

103.    LG does not infringe, has not infringed, has not and does not induce or contribute

to the infringement of any valid and enforceable claim of U.S. Patent No. 6,997,526 ("the '526

patent"), either literally or under the doctrine of equivalents.  A true and correct copy of the '526

patent is attached hereto as Exhibit M.

104.    The '526 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103,

and/or 112.

**COUNT NINE:**
**FALSE ADVERTISING**
**(15 U.S.C. § 1125(a)(1)(B) OF THE LANHAM ACT)**

105.    LG realleges and incorporates by reference each of paragraphs 1-104 above, as if

fully set forth herein.

106.    On information and belief, Whirlpool has made and continues to make

misrepresentations in commerce that are likely to cause confusion, mistake or deception, and that

damage LG.

107.    On information and belief, Whirlpool's acts of misrepresentation have caused LG

irreparable injury and damages in an as-yet-undetermined amount and, unless and until enjoined

by this Court, will continue to do so.

108.    Whirlpool's misrepresentations constitute false and misleading descriptions and

misrepresentations of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a)(1)(B).

**COUNT TEN:**
**DECEPTIVE TRADE PRACTICES**
**(DELAWARE DECEPTIVE TRADE PRACTICES ACT AND**
**OTHER COMPARABLE, APPLICABLE STATE**
**UNFAIR AND/OR DECEPTIVE TRADE PRACTICES ACTS)**

109. LG realleges and incorporates by reference each of paragraphs 1-108 above, as if fully set forth herein.

110. On information and belief, Whirlpool has made and continues to make disparaging statements regarding LG and its products by false or misleading representation of fact that damage LG.

111. On information and belief, Whirlpool's acts of disparagement have caused LG irreparable injury and damages in an as-yet-undetermined amount and, unless and until enjoined by this Court, will continue to do so.

112. Whirlpool's misrepresentations constitute deceptive trade practices, in violation of 6 Del. C. § 2532, or other applicable state laws of disparagement.

**PRAYER FOR RELIEF**

**WHEREFORE,** LG respectfully requests the following relief:

A.      the entry of judgment that Whirlpool has infringed one or more claims of the '121, '922, '292, and '689 patents;

B.      the entry of judgment that Whirlpool's infringement of the '121, '922, '292, and '689 patents has been deliberate and willful;

C.      a permanent injunction enjoining Whirlpool, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from further infringement of the '121, '922, '292, and '689 patents;

D.      the entry of judgment awarding LG compensatory damages for Whirlpool's infringement of the '121, '922, '292, and '689 patents;

E.      the entry of judgment awarding LG enhanced damages up to three times their amount pursuant to 35 U.S.C. § 284;

F.      a declaration of invalidity of the '130, '601, '154, and '526 patents;

G.      a declaration of no infringement by the '130, '601, '154, and '526 patents;

H.      a declaration of unenforceability of the '601 and '154 patents;

I.      the entry of judgment awarding LG reasonable attorney fees pursuant to 35 U.S.C. § 285;

J.      the entry of judgment pursuant to 15 U.S.C. § 1125 that Whirlpool is liable for making false and misleading statements in commerce;

K.      the entry of judgment pursuant to 6 Del. C. § 2532  and other comparable, applicable state deceptive and unfair trade practices acts claims that Whirlpool is liable for disparagement;

L.      the entry of a permanent injunction prohibiting Whirlpool from making misrepresentations or disparaging statements in commerce about LG and its products;

M.      the entry of judgment awarding LG punitive and statutory damages, which may be trebled;

N.      the entry of judgment awarding LG pre- and post-judgment interest on its damages, together with all costs and expenses;

O.      such other relief as this Court may deem just and proper.

Dated:  April 14, 2009

By:  */s/ Richard K. Herrmann*

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Amy A. Quinlan (I.D. #3021)
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

Attorneys for Plaintiffs
LG ELECTRONICS U.S.A., INC. AND
LG ELECTRONICS, INC.

*Of Counsel*:

Patrick J. Coyne
Richard L. Stroup
Andrew C. Sonu
Walter D. Davis, Jr.
Jeffrey W. Abraham
Hayley S. Weimer
patrick.coyne@finnegan.com
richard.stroup@finnegan.com
andy.sonu@finnegan.com
walter.davis@finnegan.com
jeffrey.abraham@finnegan.com
hayley.weimer@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone:     (202) 408-4000
Facsimile:     (202) 408-4400