1    IN THE UNITED STATES DISTRICT COURT

2    IN AND FOR THE DISTRICT OF DELAWARE

3                          -   -   -

4    LG ELECTRONICS U.S.A., INC.,    :    Civil Action
     and LG ELECTRONICS, INC.,       :
5                                     :
                 Plaintiffs,          :
6                                     :
          v.                          :
7                                     :
     WHIRLPOOL CORPORATION,           :
8                                     :
                 Defendant.           :    08-234(GMS)
9    ─────────────────────────────────

10   WHIRLPOOL CORPORATION,           :
     WHIRLPOOL PATENTS COMPANY,       :
11   WHIRLPOOL MANUFACTURING          :
     CORPORATION, and MAYTAG          :
12   CORPORATION,                     :
                                      :
13                 Counterclaim       :
                   Plaintiffs,        :
14                                     :
          v.                          :
15                                     :
     LG ELECTRONICS U.S.A., INC.,     :
16   LG ELECTRONICS, INC., and LG     :
     ELECTRONICS MONTERREY MEXICO,    :
17   S.A., DE, CV,                    :
                                      :
18                 Counterclaim       :
                   Defendants.        :
19                          -   -   -

20                    Wilmington, Delaware
21              Thursday, March 11, 2010
                      10:17 a.m.
22               Trial - Day Nine

23                          -   -   -

24   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
                              and a Jury
25

1    APPEARANCES:

2              RICHARD K. HERRMANN, ESQ.
               Morris James
3                       -and-
               PATRICK J. COYNE, ESQ.,
4              ANAND K. SHARMA, ESQ.,
               JEFFREY W. ABRAHAM, ESQ., and
5              WALTER D. DAVIS, JR., ESQ.
               Finnegan, Henderson, Farabow,
6              Garrett & Dunner, L.L.P
               (Washington, D.C.)
7
                              Counsel for Plaintiffs and
8                             Counterclaim Defendant

9              FREDERICK L. COTTRELL, III, ESQ., and
               ANNE SHEA GAZA, ESQ.
10             Richards, Layton & Finger, P.A.
                        -and-
11             SCOTT F. PARTRIDGE, ESQ.,
               PAUL R. MORICO, ESQ.,
12             AMANDA M. WOODALL, ESQ.,
               GENE SPEARS, ESQ., and
13             ROBINSON VU, ESQ.
               Baker Botts L.L.P.
14             (Houston, TX)

15                            Counsel for Defendant and
                              Counterclaim Plaintiffs
16

17                            -  -  -

18

19

20

21

22

23

24

25

1       (The following took place in chambers at

2    approximately 10:17 a.m.)

3       THE COURT: What we have, as you can see, is the

4    jury deliberating in the courtroom.  I don't want to disturb

5    those deliberations.  It seems like they have gotten

6    comfortable there.  That is why I am jamming you,

7    unfortunately, into this small space.

8       They have submitted two requests.  The one is a

9    little confusing.  It reads:  Can we please have -- they are

10   very polite:  "Good morning, Your Honor.

11      "Can we please have Dr. Bessler's testimony from

12   Tuesday, March the 8th."

13      Now, Tuesday wasn't March the 8th.  I know that

14   because March 8th is my birthday.  It is Monday.  So I asked

15   Mr. Maurer to give me the testimony, and he PDF'd me a

16   transcript of Dr. Bessler's testimony from Tuesday, March

17   the 2nd.

18      Now, Dr. Bessler testified twice.  It may be

19   prudent for us to send back a question to the jury asking

20   them whether they want the first or the second Bessler

21   testimony or both.

22      Let me jump ahead to what I do with regard to

23   these kinds of requests and what is an approved process in

24   the Third Circuit, which would be the governing law, because

25   this is not a patent-specific issue.

1    Read-backs are approved in the Third Circuit.  I

2    would not give the testimony, unless requested by the

3    parties to do that, to the jury.

4    First, I would like to get your view on what I

5    have now announced to you is the approved process and

6    whether there are objections to a read-back.

7    MR. COYNE:  There is no objection to a

8    read-back, Your Honor.  My only concern is, do we know which

9    one they really want?

10    MR. PARTRIDGE:  The practice in this circuit is

11    to do the read-back?

12    THE COURT:  Yes.

13    MR. PARTRIDGE:  We would be agreeable to the

14    read-back.

15    THE COURT:  Different circuits vary.

16    MR. PARTRIDGE:  We are here in the Third

17    Circuit, and we will follow the rules of the Third Circuit.

18    THE COURT:  Okay.  It's about, if it's Tuesday,

19    March the 2nd, it's 49 pages of testimony, which Mr. Maurer

20    says will take him about 25 minutes or thereabouts to read

21    back.

22    The second request, I won't editorialize, is

23    this:

24    "Can we please have closing arguments for both

25    LG and WP?"

1           Now, my instinct is this:  As you know,

2 statements and arguments of counsel are not evidence.

3 Therefore, I would be disinclined to accede to this request.

4           I can understand, because sometimes I order

5 closings -- not closings -- arguments on motions from

6 lawyers so that I can reflect back on what you have said

7 because I don't retain it all all the time.  I am sure this

8 jury has a lot on its mind and they are trying to reflect

9 back on the things that you said about the evidence.

10           But we can't be sure, it seems to me -- I think

11 we want to be sure that they don't mistakenly use it as

12 evidence.

13           What is your view?

14           MR. COYNE:  Your Honor, I would not send the

15 arguments back to them.  Like you said, it's not evidence.

16 I think it does have -- the presentation is what matters,

17 not what's on the transcript for the arguments.

18           MR. PARTRIDGE:  I share that view, Your Honor.

19           THE COURT:  Then I am going to send a question

20 back just along the lines of what I said:  Do you want the

21 first Bessler or the second Bessler or both?

22           MR. PARTRIDGE:  Right.

23           THE COURT:  You might as well just stay.  We

24 will have the jury officer take this in and get an answer

25 from them.

1                    (Recess taken.)

2                    (The following took place in chambers.)

3                    THE COURT:  We are just waiting for them to

4    answer.

5                    (Chief Deputy Clerk Walker hands note to Court.)

6                    THE COURT:  The first response here, above the

7    first signature of the foreperson is:  All testimony the

8    second time he took the stand, from the second time he took

9    the stand.

10                   Then, "Please provide the second time, March

11   9th.

12                   "Happy birthday, Your Honor."

13                   So it's when he came back on Monday, the 8th.

14                   So we will have to interrupt their

15   deliberations.  As soon as Mr. Maurer is ready, we will

16   interrupt them, unless they are actively examining one of

17   the exhibits in the courtroom, and ask them to return to the

18   jury room.

19                   Actually, whether they are examining it or not,

20   we can do the read-back.

21                   Anything else?

22                   MR. PARTRIDGE:  Nothing further here.

23                   (The following took place in open court.)

24                   THE COURT:  Good morning.  The jury is on its

25   way in.

```
 1              The second Bessler session was a little longer.

 2              (Jury enters courtroom at 10:40 a.m.)

 3              Good morning, members of the jury.  Take your

 4   seats.  And thank you for my belated birthday wishes.

 5              A JUROR:  Two other people have their birthdays

 6   this week, too.

 7              THE COURT:  Some of the lawyers, as well.  I

 8   won't tell you which ones.  I don't want any bias or

 9   anything.

10              So, ladies and gentlemen, you have requested the

11   second Bessler testimony.  And the procedure that we employ

12   here in the Third Circuit is a read-back.  So we are going

13   to ask Mr. Maurer, who is prepared right now, to read back

14   to you Dr. Bessler's testimony of the second session.

15              (At this point the court reporter read back the

16   entirety of Dr. Bessler's testimony given on Monday, March

17   8, 2010, omitting colloquy and sidebar conferences.)

18              THE COURT:  Thank you, Mr. Maurer.

19              Ladies and gentlemen, you have also made a

20   second request.  As to that, given that the lawyers'

21   statements and arguments -- specifically, the request, just

22   to remind you what it was in case you don't remember, was

23   for the closing arguments of both LG and WP.  That's what

24   you sent to me.

25              So after conferring with the lawyers, the Court
```

1    and counsel have agreed that I should respond thusly:  That

2    is that, given that the lawyers' statements and arguments

3    are not evidence and that you must decide the case based

4    only on the evidence as I have defined it for you, I am

5    constrained to decline your request for the closing

6    arguments of counsel for LG and Whirlpool.

7              I suspect you want to order your lunch if you

8    haven't already.

9              All right, then.  We will let you go do that.

10             The courtroom will be locked again, so you can

11   access it as needed.

12             Let's recess.

13             (Jury leaves courtroom at 12:05 p.m.)

14             (Recess taken.)

15             THE COURT:  Take your seats, counsel.  For the

16   record, the Court has passed out, prior to taking the Bench,

17   a question from our jury, which reads:

18             "Your Honor, if we find a (sic) independent

19   claim to be valid and not obvious, can we find a claim that

20   is dependent on the not obvious claim invalid due to

21   obviousness?"

22             It is signed by the putative foreperson.

23             I have passed out copies of the question to each

24   side, so they could think about it before I came out.  I

25   will open the floor in a minute.

1           My thought is, the short answer to the question

2    is yes, obviously, that we know that the analysis is a

3    claim-by-claim analysis, and that a claim, regardless of its

4    status as an independent claim or a dependent claim, can be

5    determined invalid for any number of reasons.

6           I am not sure, in looking at the final jury

7    instructions before I came out, and I think this might be

8    why the question is asked, that there is an instruction that

9    exactly answers this question.

10          I just offer those thoughts.  And I will hear

11   from plaintiff first as to, Mr. Coyne, your view as to how

12   you think the Court should answer this question.

13          MR. COYNE:  Your Honor, I guess my initial

14   reaction was the opposite of the Court's, because you would

15   still have all the limitations of the independent claim,

16   which was valid, subsisting in the dependent claim.

17          But Your Honor makes a good point.  Each claim

18   does have to rise or fall separately.  If, for example, I

19   add an obvious element to an unobviousness independent

20   claim, the unobvious independent claim will still survive.

21   But if the dependent claim is not patentably distinct, I

22   think you raise a good point:  Why should it be valid?

23          I guess I don't know the answer to the question,

24   Your Honor.  My initial reaction was opposite.  I understand

25   your point.

1     THE COURT:  I can understand, by the way.  Mr.

2     Partridge, it looks like you concur with your colleague.

3     MR. PARTRIDGE:  My reaction was the same as Mr.

4     Coyne's, that the answer to this is no.  I still believe

5     that to be the case, because all the dependent claim does is

6     add something to an otherwise valid, nonobvious claim.  And

7     you can't add something and have the addition of something

8     render that which is already valid and not obvious somehow

9     obvious.  I think we would end up with the risk of really

10    inconsistent conclusions by the jury if we answered this

11    question in any other way other than no, because, you look

12    at it as Elements A, B, C and D in the independent claim,

13    the combination of which is unobvious and valid.  Then you

14    add E to that combination, you still have that combination,

15    you have that valid unobvious combination of A, B, C and D,

16    and the addition of E can't render obvious that which has

17    already been found to be unobvious.

18    THE COURT:  Let's remind ourselves of the

19    question:  If we find an independent claim to be valid and

20    not obvious, can we find a claim that is dependent on the

21    nonobvious claim invalid due to obviousness?

22    In other words, can the dependent claim be,

23    nonetheless, even though the independent claim is not

24    obvious, can the dependent claim be obvious?

25    MR. PARTRIDGE:  That is exactly why I gave the

1    answer I did, because the last part of this phrase is asking

2    whether or not you can then find the dependent claim

3    obvious.

4            It is true, Your Honor, that the material in the

5    dependent claim may not add a subject matter which

6    patentably distinguishes that dependent claim on its own,

7    that is true.  But the way the law works with respect to

8    dependent claims, they incorporate all of the subject matter

9    of the independent claim, which is found not to be obvious.

10           So I suspect what is happening is that they have

11   decided that the added limitation in the dependent claim

12   doesn't make a difference to them in terms of the

13   patentability of that claim, that is fine, and it may not

14   be.

15           I mean, it may be, in my example of Elements A,

16   B, C and D with the addition of E in the dependent claim,

17   that E is something that was known and by itself doesn't add

18   to the patentable nature of the independent claim, but the

19   dependent claim is still valid because of the reliance on A,

20   B, C and D in the independent claim.  So you can't find the

21   dependent claim invalid even though it ends up adding

22   something that the jury has concluded, by itself, doesn't

23   add to the patentable merit of the invention.

24           That can happen.  I mean, they may in this case,

25   just to pick an example, if, for example -- I don't think we

1    have a claim in here to the transparent nature, I think we

2    dropped that claim.  So let's pick, there is a claim that is

3    not at issue that we dropped that says the bin is

4    transparent.  They could well say, had that claim been

5    before them, that transparency, that doesn't add anything to

6    this.  While it is true that a claim directed to

7    transparency from their point of view does not add

8    additional patentable subject matter, the claim from which

9    it depends has Elements A, B, C and D, which stand as

10   unobvious and valid by themselves.  So you can't find the

11   dependent claim invalid.

12           Now, what they could do is to -- from the

13   standpoint of the verdict, if they find the independent

14   claim valid, they have to find the dependent claim valid.

15   If they wanted to comment that they didn't think it added

16   patentable subject matter, I suppose that would be okay.

17   But as a matter of law, they can't find the dependent claim

18   invalid as obvious.

19           The question speaks to obviousness throughout.

20   It doesn't shift to a different basis for invalidity.  It is

21   all about obviousness.  Under the obviousness criteria, that

22   dependent claim, if it doesn't add something patentable in

23   and of itself, it is still valid as unobvious because the

24   base claim has been found valid and unobvious.

25           THE COURT:  So, in essence, you say, if the jury

```
 1    has determined the asserted -- and that assumes they are

 2    looking at an asserted independent claim and not claim 10 of

 3    the '121 patent.

 4            MR. PARTRIDGE:  That's true.  But the answer

 5    would be the same.  It could go both ways, for either one of

 6    us, depending on which patent they are looking at.  But my

 7    answer is the same.  If they are looking at the '121 and

 8    it's claim 10 --

 9            THE COURT:  Regardless of the patent, you say,

10    if they have determined that an independent claim is valid,

11    then they must conclude that the claims that depend upon

12    that valid and independent claim are valid as well.

13            MR. PARTRIDGE:  That's correct.

14            THE COURT:  I am not sure there is anything in

15    the jury instructions that suggests that outcome.

16            MR. SPEARS:  There is not, Your Honor.

17            THE COURT:  Mr. Coyne.

18            MR. COYNE:  Agreement.  There is nothing in the

19    jury instructions that addresses this precise issue.  I

20    think, thinking through it, Your Honor, where we are, a

21    dependent claim will not be patentably distinct but that

22    does not make it invalid even if there is additional prior

23    art, because as Mr. Partridge says, let's say it's A, B, C

24    instead of A, B, C and D, it is still valid as the

25    independent claim even though D added nothing.
```

```
 1                    THE COURT:  So you agree.

 2                    MR. COYNE:  I think I agree.

 3                    THE COURT:  I am persuaded that you are correct.

 4    But I am sympathetic with the jury, who is looking at this

 5    matter, to ask them to look at each open claim.

 6                    For future purposes, you ladies and gentlemen

 7    and this Court may need to consider this approach.

 8                    I don't know if in your experience you have ever

 9    had this question propounded to you by a jury before.

10                    I haven't.  I have had a number of these cases,

11    been on the Bench 11 years now, and I haven't seen it.

12                    MR. SPEARS:  We could have broken up the verdict

13    form by validity claim by claim, instead of asking each

14    question, so you hit a dependent claim first, and if your

15    answer is no, you don't respond to the subsequent dependent

16    claims.  That is probably the way to handle it to avoid this

17    type of issue.

18                    THE COURT:  Now that you mention it, I have seen

19    that approach.

20                    MR. PARTRIDGE:  I am looking at the

21    instructions, Your Honor.  It may be helpful to give them

22    the answer no, and then refer them to Instruction 3.1,

23    second paragraph, which does talk about dependent claims.

24    And when you give them the answer no, this may help them

25    understand it:  A dependent claim does not itself recite all
```

1    of the requirements of the claim but refers to another claim

2    for some of its requirements.  In this way the claim depends

3    on another claim.

4              Did you want to follow along, Mr. Coyne?

5              THE COURT:  Page 12 of the instructions.

6              MR. PARTRIDGE:  You can follow here, if you

7    don't have it.

8              MR. COYNE:  I have it.

9              MR. PARTRIDGE:  Then the next sentence is:  A

10   dependent claim incorporates all of the requirements the

11   claims to which it refers.  The dependent claim then adds

12   its own additional requirements.  To determine what a

13   dependent claim covers, it is necessary to look at both the

14   dependent claim and any other claims to which it refers.

15             Now, this talks about it in terms of a product.

16   That looks like that next sentence is talking more about

17   infringement.  But up there, that part of the instruction,

18   it gives them a framework from which they will understand, I

19   think, the answer no to the specific question they have

20   asked.

21             THE COURT:  What do you think, Mr. Coyne?

22             MR. COYNE:  I think that's right.  We are not

23   doing it in the context of validity in the instruction, but

24   the concept is covered, at least in this infringement

25   instruction.

```
 1              THE COURT:  So you would agree that the Court

 2    should read up to the last sentence, beginning with the

 3    beginning of the second paragraph?

 4              MR. COYNE:  Yes, Your Honor.

 5              THE COURT:  After reporting to the jury that the

 6    short answer, ladies and gentlemen, to your question is no?

 7              MR. COYNE:  Yes, Your Honor.  One exception.  I

 8    noticed when we went through this, when we were reading this

 9    the other day, something we both missed, we said the

10    remainder of the claims are dependent.  It was Claim 6,

11    which is independent.

12              THE COURT:  Start out with a dependent claim.

13              MR. PARTRIDGE:  I concur.

14              THE COURT:  Okay.  Ms. Walker.

15              (Jury enters courtroom at 3:50 p.m.)

16              THE COURT:  Welcome back, our intrepid jury.

17    Please, have your seats.

18              So, ladies and gentlemen, the question that you

19    have asked, just to refresh everybody's recollection, is:

20    If we find an independent claim to be valid and not obvious,

21    can we find a claim that is dependent on the not obvious

22    claim invalid due to obviousness?

23              The short answer, ladies and gentlemen, is no.

24              Let me remind you of something I advised you

25    earlier.  And I would ask you to confine, in this regard, in
```

1   regard to the answer to this question, when you go back and

2   take a look at this Page 12 of your jury instructions, to

3   the second paragraph of the instructions, beginning with the

4   second sentence of that paragraph, up until the next-to-last

5   sentence.

6           Here we go.

7           A dependent claim does not itself recite all the

8   elements of the claim but refers to another claim for some

9   of its requirements.  In this way, the claims depend on

10  another claim.  A dependent claim incorporates all of the

11  requirements of the claim or claims to which it refers.  The

12  dependent claim then adds its own additional requirements.

13  To determine what a dependent claim covers, it is necessary

14  to look at both the dependent claim and any other claim or

15  claims to which it refers.

16          Keep that language in mind when you go back.

17  Again, the short answer is no.

18          (Jury leaves courtroom at 3:54 p.m.)

19          THE COURT:  I think they wanted to say, if that

20  is the case -- I am certain I saw some body language in that

21  box that says we have another question then.  I think you

22  might as well stay around for a few moments, because I think

23  they are going to add another question.

24          Let's recess.

25          (Recess taken.)

```
 1              THE COURT:  All right.  For the record, I have
 2    received a note from the jury:  "We have reached a verdict."
 3              (Jury enters courtroom at 4:06 p.m.)
 4              THE COURT:  Please take your seats, ladies and
 5    gentlemen.  Who speaks for you?
 6              THE FOREPERSON:  Me.
 7              THE COURT:  Will you rise, sir, and pass the
 8    verdict form over to our Chief Deputy, let me inspect it.
 9              (Foreperson passes verdict sheet to Chief Deputy
10    Clerk Walker.)
11              (Chief Deputy Clerk Walker passes verdict sheet
12    to Court.)
13              (Pause.)
14              THE COURT:  All right.  Ladies and gentlemen,
15    please listen carefully, as Ms. Walker is about to publish
16    your verdict.
17              You may be requested by one party or both to be
18    polled as to your individual verdicts.  Listen carefully.
19              (Verdict sheet returned to Chief Deputy Clerk
20    Walker.)
21              THE COURT:  Ms. Walker.
22              CHIEF DEPUTY CLERK WALKER:  We, the jury,
23    unanimously find as follows:
24              As to LG's patent in suit.  The '121 patent, on
25    the issue of infringement.  Has LG proven, by a
```

1   preponderance of the evidence, that Whirlpool has literally

2   infringed any of the following claims of the '121 patent?

3           As to Claim 20:  No.

4           As to Claim 21:  No.

5           As to Claim 36:  No.

6           On the issue of obviousness.  Do you find that

7   Whirlpool has proven by clear and convincing evidence that

8   any of the following claims of LG's '121 patent would have

9   been obvious to a person of ordinary skill in the field at

10  the time the patent application was filed?

11          As to Claim 20:  No.

12          As to Claim 21:  No.

13          As to Claim 36:  No.

14          As to Whirlpool's patents in suit.  Whirlpool's

15  '130 patent.  On the issue of infringement by side-by-side

16  refrigerators, has Whirlpool proven, by a preponderance of

17  the evidence, that LG has literally infringed any of the

18  following claims of the '130 patent with its side-by-side

19  refrigerators?

20          As to Claim 1:  Yes.

21          As to Claim 2:  Yes.

22          As to Claim 6:  Yes.

23          As to Claim 8:  No.

24          As to Claim 9:  Yes.

25          On the issue of infringement by French-door

refrigerators.  Has Whirlpool proven, by a preponderance of
the evidence, that LG has literally infringed any of the
following claims of the '130 patent with its French-door
refrigerators?

                As to Claim 1:  No.

                As to Claim 2:  No.

                As to Claim 6:  No.

                As to Claim 8:  No.

                As to Claim 9:  No.

        On the issue of infringement under the doctrine
of equivalents by French-door refrigerators, has Whirlpool
proven that it is more likely than not that the accused LG
French-door refrigerators include parts that are identical
or equivalent to every element of the claim listed below?
In other words, for any element that is not literally found
in LG's accused product, does the accused product have an
equivalent part to that element?

                As to Claim 1:  No.

                As to Claim 2:  No.

                As to Claim 6:  No.

                As to Claim 8:  No.

                As to Claim 9:  No.

        On the issue of willful infringement, has
Whirlpool proven by clear and convincing evidence that LG
willfully infringed the '130 patent?

1       No.

2              As to written description requirement.   Has LG

3    proven by clear and convincing evidence that a person of

4    ordinary skill in the field who read the '130 patent as

5    originally filed would not recognize that the patent

6    application described the invention as claimed?

7              No.

8              On the issue of anticipation.   Has LG proven by

9    clear and convincing evidence that any of the following

10   claims of Whirlpool's '130 patent are invalid as

11   anticipated?

12             As to Claim 1:   No.

13             As to Claim 2:   No.

14             As to Claim 6:   No.

15             As to Claim 8:   No.

16             As to Claim 9:   No.

17             On the issue of obviousness.   Do you find that

18   LG has proven by clear and convincing evidence that any of

19   the following claims of Whirlpool's '130 patent would have

20   been obvious to a person of ordinary skill in the field at

21   the time the patent application was filed?

22             As to Claim 1:   No.

23             As to Claim 2:   No.

24             As to Claim 6:   No.

25             As to Claim 8:   No.

1          As to Claim 9:  No.

2          On the issue of damages, what amount of damages

3    has Whirlpool proven would be adequate to compensate for

4    LG's infringement of the '130 patent, which amount cannot be

5    less than a reasonable royalty?

6          $1,786,925.

7          As to Whirlpool's '601 patent.  On the issue of

8    infringement.  Has Whirlpool proven, by a preponderance of

9    the evidence, that LG has literally infringed any of the

10   following claims of the '601 patent?

11         As to Claim 1:  Yes.

12         As to Claim 4:  Yes.

13         As to Claim 15:  Yes.

14         On the issue of anticipation.  Has LG proven, by

15   clear and convincing evidence, that any of the following

16   claims of Whirlpool's '601 patent are invalid as

17   anticipated?

18         As to Claim 1:  Yes.

19         As to Claim 4:  Yes.

20         As to claim 15:  Yes.

21         On the issue of obviousness.  Do you find that

22   LG has proven by clear and convincing evidence that any of

23   the following claims of Whirlpool's '601 patent would have

24   been obvious to a person of ordinary skill in the field at

25   the time the patent application was filed?

1          As to Claim 1:  No.

2          As to Claim 4:  No.

3          As to Claim 15:  No.

4          THE COURT:  All right.  Does either party or

5    both wish to have the jury polled?

6          MR. COYNE:  No, Your Honor.

7          MR. PARTRIDGE:  No, Your Honor.

8          THE COURT:  All right.  Then I will direct that

9    the verdict be recorded.

10          And, ladies and gentlemen, on behalf of the

11    parties and, of course, the Court, we wish to thank each and

12    every one of you for your service, and wish you a good

13    evening and safe travels.

14          Thank you.

15          (At 4:15 p.m. the jury was excused.)

16          THE COURT:  Why don't you sit for a moment.

17          Just a couple of ministerial items.

18          As to briefing, you have preserved your points

19    for review.  All you need do is, within the allotted time,

20    file your notice, whatever notices you are going to file.

21    Why don't you decompress a bit, agree on a briefing

22    schedule.

23          MR. PARTRIDGE:  Yes, Your Honor.  We have talked

24    about that.

25          THE COURT:  I am not pressing you on that.  Just

1   submit it for my consideration.

2           And I think that's all I have for you, other

3   than to invite you, if you wish to remain for a few minutes,

4   I always go back and talk to the jury, and will bring back

5   to you any comments of a constructive nature that won't

6   invite additional argument in the Federal Circuit.

7           I actually did that once.  I revealed something

8   that I probably shouldn't have that I felt about my claim

9   construction, that is, that I had blown it, only to be

10  disappointed to later hear that the lawyers, in what I

11  thought was designed to be a candid sharing of thoughts,

12  argued that in front of the Federal Circuit.

13          So I am very careful about what I say.

14          So if you want to stay, I won't be long, and I

15  will come back out.

16          (At 4:16 p.m. the trial was concluded.)

17

18                      -   -   -

19  Reporter:  Kevin Maurer

20

21

22

23

24

25